**AMBAR DIAMONDS, INC.**

**v.**

**SAKS FIFTH AVENUE.**

**No. 90 Civ. 6857 (RO).**

United States District Court, S.D. New York.

Oct. 30, 1990.

Levisohn Lerner & Berger (Peter L. Berger, of counsel), New York City, for plaintiff.

Cooper Dunham Clark Griffin & Moran (Norman H. Zivin, of counsel), New York City, for defendant Saks Fifth Avenue and Saks Fifth Avenue Folio Collection.

ENDORSED MEMORANDUM

OWEN, District Judge:

Plaintiff Ambar Diamonds seeks a preliminary injunction against defendants Saks Fifth Avenue and Saks Fifth Avenue Folio Collections from selling a particular "quadrillon" cubic zirconia ring advertised only in Saks' "Folio 1990" catalogue, because it allegedly infringes upon the registered "Quadrillion" trademark that plaintiff uses in connection with its line of diamond jewelry.[1] On the theory that Saks' catalog is targeted at Christmas shoppers, and that plaintiff does 50% of its yearly business in the three months preceding Christmas, plaintiff also seeks to compel defendants to recall the rings that were sold, engage in a program of corrective advertising in regional newspapers, trade journals and magazines that the ring was never advertised in, and send direct mail announcements to all 1,550,000 recipients

---

**1.** Though Saks' ring looks highly similar to plaintiff's best-selling ring, this similarity is not complained of, and is not an issue in this case. Only the alleged infringement of the trademark is an issue.

of Saks' catalog correcting the characterization of the ring. Only six rings have been ordered and shipped to date.

Plaintiff manufactures high-quality diamond and gold jewelry, which it sells to retailers in the United States and abroad. Plaintiff's trademark "Quadrillion" is used in conjunction with all of the jewelry that it manufactures. Although there are a number of different cuts of diamonds—round, square, marquis, pear, heart—plaintiff primarily uses square-cut diamonds for its jewelry. Plaintiff's vice president Itskowitz states in an affidavit that "[t]he exceptional quality and value of Quadrillion diamonds and the nature of Ambar's advertising thereto has resulted in a relatively narrow, high-end market." The company's diamond jewelry retails in the price range of $10,000 to $40,000.

Plaintiff claims that defendants infringed upon that trademark with the following advertisement for a $590 cubic zirconia ring that resembles plaintiff's signature ring:

> Jewelry that sparkles with cubic zirconia set in 14K gold. From the Diamonair collection. Shown actual size. Quadrillon [2] channel set band, 3.3 carat total weight.

2. Defendants state that the word "quadrillon," not "quadrillion," appears in the ad because the Saks employee responsible for the advertisement was trying to phonetically spell a word that she had heard but did not know how to spell, not because Saks was trying to distance itself from a known trademark.

3. This view is supported by the affidavits of Gene Keyes, General Manager of Diamonair, the cubic zirconia manufacturer who made the ring advertised in the Saks catalogue, and by Donna Tobin, an attorney in the firm that represents defendant. Mr. Keyes, who has been in the cubic zirconia business for 24 years, states that he "understand[s] the term 'quadrillion' to refer to the particular shape and cut of a gem stone ... Throughout the diamond and cubic zirconia trade, the term 'quadrillion' is used by manufacturers and sellers as a generic term for a particular cut and shape of a gem stone. Many buyers of diamond and cubic zirconia jewelry who work for retail stores use the term 'quadrillion' to describe or request a particular cut and shape of a diamond or cubic zirconia

Defendant's employee, Mara Perlmutter, who was a buyer of cubic zirconia for Saks and was responsible for the description in the catalog, testified before me on this motion that vendors in the trade use the term "quadrillion" to describe the shape of a diamond, not as a mark of the Ambar Diamond company,[3] and that is why she used the word to describe the ring featured in the catalog. Ms. Perlmutter explained that her experience has been that the terms "quadrillion," square-cut and "princess-cut" are used interchangeably by manufacturers' sales representatives to describe square-shaped diamonds.

In order to prevail on this motion, plaintiff must demonstrate irreparable harm and a probability of success on the merits. *American Cyanamid Co. v. Campagna Per La Farmacie*, 847 F.2d 53 (2d Cir. 1988). In light of defendants' representation that it has agreed not to use the words "quadrillon" or "quadrillion" in subsequent catalogs in connection with marketing that ring, I turn to whether any immediate relief is warranted. On these facts, I conclude that it is not.

First, I am not adequately satisfied on this record that plaintiff will probably prevail on the merits. There is considerable evidence before me that "quadrillion" is a

stone, and not to identify any particular manufacturer."

Ms. Tobin similarly states that on October 5, 1990, she asked two separate salespersons at the Cartier jewelry store to show her "quadrillion" rings. Although Cartier does not sell any of plaintiff's jewelry, the salespersons showed Ms. Tobin several diamond rings and informed her that the word "quadrillion" refers to the type of cut of diamonds.

The only witness in the trade who had not heard "quadrillion" used to describe the shape of a stone was the plaintiff's vice president.

A review of advertisements for plaintiff's jewelry leads me to conclude that plaintiff may have contributed to this perception that the term "quadrillion" refers to the shape of a diamond. For example, one Quadrillion ad states: "Unlike the round cut, Quadrillion diamonds are cut precisely to fit, creating a 'solid diamond' look, free of spaces between stones." Likewise, many ads featuring plaintiffs jewelry refer to "Quadrillion*s*" and to "Quadrillion cut" diamond band rings and bracelets.

well-known trade term for the shape of the stone. If this is so, plaintiff's trademark avails it nothing. Furthermore, I am not satisfied that there is any great confusion as to source.[4] The ring that Saks advertised cannot be deemed to be in direct competition with the rings that plaintiff sells. Most obviously, the Saks ring is imitation diamond, while plaintiff's jewelry is made with genuine diamonds. As such, the price differential between the items is enormous, and Saks' catalog states that Diamonair is its source.

Plaintiff nonetheless argues that the association of the word "quadrillon" with cubic zirconia dilutes the value of the "quadrillion" trademark and already has caused one customer not to purchase an Ambar piece of jewelry. However, I suspect that what is more likely irking plaintiff is the existence of a nearly exact copy of Ambar's signature ring in cubic zirconia form, and the inability to restrain the sale based upon the ring's design, which is not protected.[5]

Finally, I find that the remedial measures that plaintiff seeks are disproportionate to any injury that plaintiff allegedly may suffer and, more significantly, any benefit that Saks may have gained. Saks admits that six of these rings were sold, making total sales of the item less than $3600. While Saks vigorously contests any liability to Ambar, it has offered a corrective comment in its next catalog. However, since that catalog is not due out until after the Christmas shopping season, plaintiff wants defendants to immediately send out a special mailing. Defendants estimate that such an undertaking would cost $1.2 million. Plaintiff estimates that it would cost $400,000. Based upon either figure, that amount is unreasonable and the measure is unwarranted, even were the right to preliminary relief clear, for damages would appear to be adequate relief after a trial.

Accordingly, plaintiff's motion is denied, and the temporary restraining order is vacated. So ordered.

---

4. I note again that the ring's appearance is not in issue. *See supra* note 1.

5. The statement of facts submitted by plaintiff, for example, notes: "Saks has incorporated the cubic zirconia artificial diamonds into a ring that is practically identical to Ambar's DeBeers award winning Quadrillion ring."